**In re RICHARDS.**

No. 52595–PH.

United States District Court
S. D. California, C. D.
Oct. 30, 1952.

Daniels & Daniels, and Russell B. Seymour, Los Angeles, Cal., for petitioner.

Craig, Weller & Laugharn, Los Angeles, Cal., for trustee.

HALL, District Judge.

This is a petition for review of the Referee's order that certain moneys due to the bankrupt under a "Dealer's Agreement"[1] constituted an "account" under the terms of Section 3017 et seq. of the California Civil Code and could not be assigned or pledged without the notice required by the provisions of the California Civil Code.

1. The pertinent provisions of the "Dealer's Agreement" are as follows:

"Dealer's Agreement

"This Memorandum of Agreement between Bank of America National Trust and Savings Association, hereinafter called 'the Bank,' and Richards Radio John D. Richards (ind.) hereinafter called 'the Seller,'

Witnesseth:

"In consideration of the mutual covenants herein contained, the Bank agrees to purchase from the Seller such conditional sales contracts issued by the Seller on the sale of its merchandise, and/or services rendered, as may be approved by the Bank, under the following terms and conditions:

"The Seller agrees, and does hereby warrant, represent and covenant, that all contracts offered by the Seller for sale will be valid deferred payment obligations for the amounts therein set forth, covering merchandise owned by the Seller, free and clear of all encumbrances, which Seller has a legal right to sell, or covering services rendered; that such contracts are not subject to any disputes, offsets or counterclaims; that Seller has sold, delivered and installed the merchandise therein mentioned; that the descriptions of said merchandise, or services rendered, therein contained are in all respects true and complete; that the purchasers named on all contracts are bona fide and have legal capacity to make such contracts; that the down payments made by the purchasers whose contracts are offered for sale have been made in cash and not its equivalent unless otherwise mentioned in said contract, and that no part thereof has been loaned directly or indirectly by the Seller to the purchasers; and that on the date of each assignment the merchandise mentioned in the contract assigned has been delivered and completely installed.

"Seller also agrees to provide and maintain service on all merchandise subject to this contract, in accordance with standard practices and policies.

"All contracts purchased by the Bank shall be without recourse, except as to any contract which may become delinquent for a period of 65 days, and as to all such contracts the Seller hereby guarantees payment of all sums of principal and interest due under the terms of said contract, and said Seller promises and agrees to pay on demand to the Bank, the balance remaining on any such contracts; said Seller also agrees that the Bank shall be under no obligation to sue or proceed against the purchasers under said delinquent contracts and hereby waives the provisions of Sections 2849 and 2850 of the Civil Code of the State of California.

"The agreed purchase price shall be paid to the Seller or credited to his account when the paper is purchased, and thereupon full title to the paper shall pass to the Bank. If an amount in excess of the purchase price plus the discount computed according to the agreed discount rate is realized by the Bank on such paper, the amount so realized shall be applied as follows:

"1. To satisfy any past due indebtedness of the Seller to the Bank arising under this contract or otherwise; and

"2. Any remaining balance of such excess above 5 percentum of the unpaid balance on the contracts then outstanding, so long as the Seller is solvent, shall be paid or credited to the Seller on the —— day of each month during the life of this contract. * * * "

The parties are not in dispute as to the facts which briefly summarized are as follows: Richards was a dealer in television receivers and other electrical appliances; he made sales to individual customers under conditional sales contracts; he entered into a "Dealer's Agreement" with the Bank of America by which he sold the conditional sales contracts; under it the Bank reserved at all times a balance of 5% as a protection against any defaults which might be made on the individual contracts; that fund was called a "Reserve Account;" this contract was made in September, 1945. On June 9, 1951, the bankrupt borrowed $5,000 from R. A. Pantages; contemporaneously he executed to Pantages a promissory note and what has been designated a "General Pledge Agreement" whereby he assigned as security to Pantages the 5% Reserve Account; notice of the pledge agreement was given to the Bank of America but no notice of assignment was made or given as required by the provisions of Section 3017 et seq. of the California Civil Code.

By appropriate proceedings before the Referee the right of Pantages to the balance of the 5% fund was challenged, and the Referee decided that said 5% fund was an "account" within the provisions of Section 3017 and not subject to the assignment or pledge agreement to Pantages.

There does not seem to be any case in California or elsewhere which is directly in point on Section 3017 of the California Civil Code or the somewhat similar statutes which have been adopted in other states. There are numerous cases which distinguish between open book account and other types of indebtedness which arose in connection with the application of the appropriate statute of limitations. Typical of these are the following: Parker v. Shell Oil Co., 29 Cal.2d 503, 175 P.2d 838; Moore v. Bartholomae Corp., 69 Cal.App.2d 474, 159 P.2d 436; People v. California Safe Deposit & Trust Co., 41 Cal.App. 727, 183 P. 289; Mercantile Trust Company of San Francisco v. Doe, 26 Cal.App. 246, 146 P. 692; Lee v. De Forest, 22 Cal.App.2d 351, 71 P.2d 285, and others.

While the analogies in those cases are helpful, it seems to me that the answer to the question appears in the face of the statute itself.

The definition is as follows: (italics supplied)

"§ 3017 California Civil Code. (Definitions.) In this chapter: (1) 'Account' means an open book account, mutual account, or account stated, due or to become due, carried in the regular course of business and *not represented by a* judgment, note, draft, acceptance, or *other instrument for the payment of money;* * * *."

Clearly the money due to Richards under the dealer's agreement was money "represented" by that "instrument" for the payment of money to Richards. The Bank purchased the contracts and owed Richards the money. And while it is true that the amount might change from time to time, nevertheless the sole right of Richards to recover from the Bank depended upon that contract. If Richards sued the Bank he would have had to sue on the contract as it alone defined the liabilities and rights between them. The fact that such account was called a "reserve account" was a mere matter of nomenclature and did not bring the transaction within the definition as an "account"; and the fact that the Bank might have kept books showing the amount due did not do so either. Such entries in books would be a mere memorandum of the *debt which accrued under the terms of the written contract.*

If the argument of the Trustee is correct it would follow as a logical conclusion that all conditional sales contracts which Richards entered into with his customers and which are so widely used in the sale of hard goods and commodities in the commercial world to-day, were and are "accounts" within the definition of Section 3017 and that the assignment and transfer of those contracts by Richards to the Bank would be void unless notice were given as required by Section 3017 of the California Civil Code. It is inconceivable that the legislature intended to impose such a burden upon the commercial world.

The statute plainly does not and was not intended to cover a situation where the

obligation is evidenced or "represented", as the statute says, by "an instrument in writing" such as exists in the instant case.

While the cases dealing with the application of the appropriate statute of limitation may not be determinative they are nevertheless helpful as illustrated by the case of People v. California Safe Deposit & Trust Company, 41 Cal.App. 727, 183 P. 289. In that case a lease was involved which resulted in litigation. A contention was made in order to avoid the statute of limitations that the cause of action depended upon book account. As to that contention the court said: "Appellant further contends that his cause of action is based upon a book account, in which the last entry was made on July 7, 1917, and, therefore, his cause of action is not barred. The alleged book account was a memorandum kept by appellant, in which he charged the amounts accruing under the contract and credited the several payments made, including that collected by him as the result of the judgment in the former suit above referred to. Appellant's alleged cause of action is based upon his contract and not upon this account. The writing is a mere memorandum of debts accruing from an entirely independent source. In Mercantile Trust Co., of San Francisco v. Doe, 26 Cal.App. 246, 253, 146 P. 692, a number of definitions of a book account, as applied to the statute of limitations, are given, among which is the following: 'In 1 Ruling Case Law, page 207, it is said: "The expression 'outstanding and open account' has a well-defined and well-understood meaning. In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and adjustment. It is usually disclosed by the account books of the owner of the demand, and does not include express contracts or obligations which have been reduced to writing, such as bonds, bills of exchange, or promissory notes." ' "

Nor is the case of Parker v. Shell Oil Co., supra, heavily relied upon by the Trustee, authority for the proposition that money due under a written contract such as the one involved in this case, might also be an open book account. In that case the money for which suit was brought involved not only so-called rentals under a lease agreement but many other items not covered by the lease agreement.

The order of the Referee is reversed. Counsel will prepare an appropriate judgment.